IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLOS HERNANDEZ,

                            Petitioner,

v.

MICHAEL MARTEL,

                            Respondent.

NO. C10-0524 TEH

ORDER DENYING PETITION
FOR WRIT OF HABEAS
CORPUS

Petitioner Carlos Hernandez, a prisoner currently incarcerated by the California Department of Corrections and Rehabilitation at Mule Creek State Prison in Ione, California, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 on February 5, 2010. After conducting an initial review of the petition, this Court ordered Respondent Michael Martel to show cause as to why the petition should not be granted.  Respondent filed an answer on April 9, 2010.  Any traverse was due by May 17, 2010.  Petitioner failed to file a traverse, and his counsel, Mr. Evans Prieston, also failed to respond to a May 19, 2010 telephone call from this Court's courtroom deputy inquiring about the traverse.  After carefully reviewing the parties' written arguments, the record, and governing law, the Court now DENIES the petition for the reasons set forth below.

## I.      BACKGROUND

Petitioner was charged with thirty counts of lewd or lascivious acts upon a child under the age of fourteen in violation of California Penal Code section 288(a).  Eleven of these counts concerned his daughter, A.H., and the remaining nineteen involved his niece, M.G.

Petitioner contends that these charges "were fabrications motivated by his wife's affair with another man and her desire to be rid of [Petitioner]."  Pet'n at 6.  This contention became the basis for a competency hearing prior to the trial.  Supported by expert testimony,

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Petitioner's trial counsel argued that Petitioner was mentally unfit to stand trial because

2    Petitioner's delusions about his wife and her alleged infidelity were preventing Petitioner

3    from discussing facts or assisting counsel with the preparation of a defense in a rational

4    manner.  At the competency hearing, Petitioner's wife testified that she did not have an

5    affair.  On November 24, 2004, the jury found Petitioner to be competent to stand trial.

6         Trial began on April 14, 2005.  Five days later, the deputy district attorney informed

7    Petitioner's trial counsel that Petitioner's wife had stated the night before that she had been

8    romantically involved with another man.  Petitioner's trial counsel asked the court to suspend

9    the trial and re-open the competency proceedings on grounds that Petitioner's wife had

10   apparently lied under oath.  The court denied the request, noting that if Petitioner's wife had,

11   in fact, had an affair, that would only support the conclusion that Petitioner was competent to

12   stand trial and was not delusional.

13        At trial, three girls testified about their interactions with Petitioner.  Born in 1988,

14   A.H. testified that Petitioner began touching her inappropriately when she was six years old,

15   when he sucked her nipple after she had just gotten out of the shower.  She stated that these

16   and similar incidents occurred once or twice a week, sometimes more, until she was twelve

17   years old, when she started to avoid being alone with him.  The incidents typically involved

18   Petitioner's sucking or rubbing her nipples, and her doing the same to him.  A.H. also

19   testified to one instance in which she touched Petitioner's penis through his underwear, and

20   another when she and Petitioner were lying on his bed watching television and she felt him

21   rub his penis against her.  In May 2003, A.H., who was then fourteen years old, told her

22   mother of these incidents, and the incidents were subsequently reported to the police.

23        M.G., who is one year younger than A.H., testified that Petitioner first touched her

24   breast when she was six years old and visiting Petitioner's family.  She also recalled another

25   incident the following year when Petitioner, who was babysitting her, touched her breast

26   under her shirt.  She testified that Petitioner would touch or suck her breasts three to four

27   times a month and sometimes made her do the same to him.  M.G. further testified that, when

28   she was thirteen, Petitioner tried to put his hand down the front of her pants while he was

2

sucking her nipples, but she stopped him.  He drove her to school later that day and, when they arrived, locked the door and kissed her, putting his tongue down her mouth.  M.G. testified that these incidents did not stop until A.H. made her report to the police.

In addition to the testimony by A.H. and M.G., the prosecution also presented testimony by another of Petitioner's nieces, G.V., who was born in 1991.  G.V. testified that Petitioner touched her chest and pinched her nipples at various times when she lived at the same house as Petitioner,[1] and that Petitioner also touched her bottom on one occasion when she was nine years old.

Petitioner was interviewed by police on May 8, 2003.  A video of this interview was shown at trial, and jurors were given copies of the interview transcript.  During the interview, Petitioner initially stated that his daughter sometimes said that she could make sexual allegations against him if he did not buy her what she wanted, and that the only time he touched his daughter and niece was when he hugged them.  Later, however, he admitted touching, kissing, and licking his daughter's nipples several times a month, and doing the same to his niece, M.G., several times.  He denied doing anything to G.V.  At times throughout the interview, Petitioner said that he felt he was sick, and that he was under a lot of stress because his wife had been having an affair.  At the suggestion of one of the interrogating officers, Petitioner wrote letters of apology to A.H. and M.G., stating that he felt that he was sick and repentant and asking for forgiveness.

On April 25, 2005, a jury found Petitioner guilty of all thirty counts of lewd or lascivious acts upon a child under the age of fourteen.  The court sentenced Petitioner to four consecutive prison terms of fifteen years to life, with concurrent terms on the remaining twenty-six counts.  The court also ordered Petitioner to pay several fines and administrative fees, as well as $10,000 each in restitution to A.H. and M.G.

Petitioner filed a timely appeal of his conviction and sentence.  In an unpublished decision filed on October 25, 2007, the California Court of Appeal found the restitution order

---

[1]G.V. testified that she moved into the same house as Petitioner when she was approximately three years old, but the record is not clear as to G.V.'s age at the time of these incidents.

to be improper but affirmed the conviction and sentence in all other respects. Petitioner filed a petition for review in the California Supreme Court, which denied the petition on January 16, 2008.

Petitioner subsequently filed a petition for writ of habeas corpus in the state trial court. On May 15, 2009, the court issued an order denying that petition, which presented the same issues Petitioner raises here. The California Court of Appeal denied Petitioner's request for habeas relief without a written decision on June 23, 2009, and the California Supreme Court summarily denied relief on December 17, 2009.

This Court has subject matter jurisdiction under 28 U.S.C. § 2254, and venue is proper in this district under 28 U.S.C. § 2241(d). The parties do not dispute that Petitioner has exhausted his state remedies as to all of the claims presented in this petition, nor do they dispute the timeliness of the petition.

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving materially indistinguishable facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 413-14 (2000). A decision is an "unreasonable application" of Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 414.

United States District Court

For the Northern District of California

4

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. *Williams*, 529 U.S. at 412. "While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1070 (9th Cir. 2003) (citation omitted).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Because the California Court of Appeal and the California Supreme Court summarily denied relief, this Court looks to the state trial court's written decision denying Petitioner's request for habeas relief.

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel and Related Claims

Petitioner's first set of arguments concerns his contention that the allegations against him were fabrications motivated by his wife's extramarital affair. He contends that trial counsel should have changed strategies as soon as he learned that Petitioner's wife told the deputy district attorney that she had been involved with another man. Petitioner argues that:

> No attempt was made to question the witnesses about the motives for the accusations. No attempt was made to link the accusations to petitioner's wife. No attempt was made to inform the jury about the context of the marital break-up in which the accusations arose.

United States District Court
For the Northern District of California

> Petitioner had no opportunity to explain the pretrial statements he had
> made or the letters he had written, which were the only things the
> jury heard from him.

Pet'n at 8.  Petitioner asserts that his trial counsel's failure to put on evidence concerning Petitioner's theory of fabrication reflects a complete break-down in the attorney-client relationship that deprived him of effective assistance of counsel.  He also contends that it violated his right to due process and a fair trial, including the right to present a defense and the right to cross-examine witnesses.

The standard for a claim of ineffective assistance of counsel has been well-established since *Strickland v. Washington*, 466 U.S. 668 (1984), and was correctly described by the state court.  To prevail on such a claim, a petitioner must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Id.* at 687.  The first component requires showing "that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The second component requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."  *Id.* at 697.

In this case, the state court found that Petitioner could not satisfy the prejudice prong of *Strickland*:

> As the Petitioner points out, the jury deliberated for less than an hour
> before finding him guilty of thirty counts of lewd and lascivious
> conduct on a child under the age of 14.  He has provided no
> documentation to establish (1) that Mrs. Hernandez would have
> testified that she had an affair, was therefore motivated to get rid of
> the Petitioner, or encouraged the victims to fabricate the charges;
> (2) that any of the victims (the two charged victims and the additional
> uncharged victim) would have admitted on cross-examination that
> they had fabricated the evidence or were encouraged by the
> Petitioner's wife to fabricate the charges; (3) that Mrs. Hernandez's
> aunt removed her daughter from the list of victims because they did
> not wish to be involve in Mrs. Hernandez's alleged plot to fabricate
> testimony, rather than for a non-exculpatory reason; or (4) in what
> way the Petitioner felt pressured and confused when he so quickly
> confessed to inappropriately touching the victims.

> Because he failed to provide any of the aforementioned supporting documentation, the Petitioner has failed to establish a prima facie case that there is a reasonable probability that, had the victims been cross-examined as to their veracity and the Petitioner testified, the Petitioner would have been acquitted.

May 15, 2009 Superior Ct. Order of Denial at 2-3 (Attach. to Pet.).

This ruling was not in any way contrary to *Strickland*.  Petitioner makes much of the phrase "Petitioner would have been acquitted," *id.*, and argues that *Strickland* requires only a reasonable probability that "the result of the proceeding would have been different," 466 U.S. at 694.  However, the Supreme Court also explained that, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695. The state court concluded that there was no such reasonable probability, and that conclusion was not objectively unreasonable.

Nor was it unreasonable or contrary to clearly established law for the state court to have concluded that Petitioner's failure to demonstrate prejudice on his ineffective assistance of counsel claim must result in denial of Petitioner's due process claim as well.  Both claims were based on the same premise: that Petitioner's trial counsel should have presented different evidence at trial.

**B.   Eighth Amendment Claim**

Petitioner next contends that his sentence to four consecutive prison terms of fifteen years to life violates the Eighth Amendment's prohibition against cruel and unusual punishment.  The state trial court rejected this claim because it "should have been raised on appeal" and was therefore "not properly raised in a habeas petition."  May 15, 2009 Superior Ct. Order of Denial 3.  The court did not reach the merits of Petitioner's arguments.

The parties have not addressed whether the state court relied on an "independent and adequate state ground" that precludes this Court's review.  *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991).  However, the Court need not decide this issue because, for the reasons discussed below, the Court would find no Eighth Amendment violation even if it could review Petitioner's claim.

**United States District Court**
For the Northern District of California

1    The Eighth Amendment prohibits punishment that is "grossly disproportionate" to the

2    offense. *Andrade*, 538 U.S. at 71-73.  Petitioner contends that he had no prior criminal

3    history, and that "[t]his case was not one where substantial sexual conduct was alleged or

4    proved.  This was not a case where force, violence, duress, menace or fear of immediate and

5    unlawful bodily injury were alleged or proven."  Mem. in Supp. of Pet. at 17-18.  Thus,

6    Petitioner contends, "two consecutive sentences would have been more than sufficient" and

7    would have "afforded petitioner the possibility of parole during his lifetime." *Id.* at 18.

8    Petitioner fails, however, to cite any case law where a sentence was found to violate the

9    Eighth Amendment under similar facts.  Moreover, the relevant question is whether the

10   imposed sentence is "grossly disproportionate," not whether some lesser punishment would

11   have been "sufficient."

12   Petitioner was convicted of thirty counts of committing lewd or lascivious acts against

13   two minors – his daughter and his niece.  He began inappropriately touching these girls when

14   each child was only six years old, and his misconduct occurred regularly for more than six

15   years.  The trial court sentenced Petitioner to four consecutive terms, each consisting of

16   fifteen years to life, and ordered that the terms on the remaining twenty-six counts run

17   concurrently.  Given the serious nature of the crimes and the harm caused by Petitioner, a

18   conclusion that this sentence was not grossly disproportionate to the offenses would not be

19   objectively unreasonable.  This case is simply not "the extremely rare case that gives rise to

20   an inference of gross disproportionality." *Ramirez v. Castro*, 365 F.3d 755, 770 (9th Cir.

21   2004) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1105 (1991) (Kennedy, J., concurring in

22   part and concurring in judgment)) (finding an inference of gross disproportionality where

23   petitioner was sentenced to twenty-five years to life in prison for shoplifting a $199 VCR,

24   when his only prior criminal history involved two prior shoplifting convictions for which he

25   received a one-year jail sentence).

26   //

27   //

28   //

**IV.    CONCLUSION**

For all of the above reasons, Petitioner has failed to show that he is entitled to habeas relief in this case.  Accordingly, with good cause appearing, the petition for a writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:   06/14/10

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

United States District Court
For the Northern District of California